**In re PUTNAM PROPERTIES,
LIMITED PARTNERSHIP,
Debtor.**

**PUTNAM PROPERTIES, LIMITED
PARTNERSHIP, Plaintiff,**

**v.**

**MANUFACTURERS AND TRADERS
TRUST CO., Defendant.**

**Bankruptcy No. 90–51494.
Adv. No. 91–5093.**

United States Bankruptcy Court,
D. Connecticut.

Dec. 31, 1991.

James Berman, Roy W. Moss, Zeisler & Zeisler, P.C., Bridgeport, Conn., for plaintiff.

Edward Krumeich, Ivey, Barnum & O'Mara, Greenwich, Conn., for defendant.

MEMORANDUM AND ORDER ON PLAINTIFF'S COMPLAINT TO AVOID A MORTGAGE AND AS-SIGNMENT OF LEASES AND RENTS UNDER §§ 544 AND 547

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff, Putnam Properties Limited Partnership, a chapter 11 debtor, seeks an order under Code §§ 544 and 547 avoiding a leasehold mortgage and an assignment of leases and rents it executed in favor of the defendant, Manufacturers and Traders Trust Company.

## I.

## BACKGROUND

On August 5, 1985, Lafayette East Limited Partnership assigned to Putnam a ground lease ("Ground Lease"), see Plaintiff's Exhibit A, of property in Greenwich, Connecticut on which a 30,500 square foot commercial office building is located. Howard S. Tuthill, Trustee is the landlord ("Landlord"). On that date, the defendant

("M & T") loaned Putnam $4,000,000.00 to acquire the Ground Lease in exchange for a $4,000,000.00 promissory note (the "Note") and a Leasehold Mortgage Deed and Security Agreement (the "Mortgage"), see Plaintiff's Exhibit C, by which Putnam transferred to M & T its interest under the Ground Lease and to the building's sub-leases, rents, and profits. The loan was intended to serve as interim financing and was payable on demand but in no event later than August 5, 1986. On August 5, 1985, Putnam executed a separate Assignment of [Sub]Leases (the "Assignment of Leases"), which also assigned the building's subleases, rents and profits from the building (the "Assignment of Leases"). See Plaintiff's Exhibit D. On that date, M & T, Putnam, and the Landlord executed an Agreement re: Putnam Properties Limited Partnership Financing (the "Financing Agreement"), see Plaintiff's Exhibit B, by which the Landlord consented to the Mortgage, as required by § 14(b) of the Ground Lease, see infra at 5. Each of the documents was properly recorded on August 8, 1985.

Paragraph 1 of the Financing Agreement provided in relevant part that

The leasehold mortgagee [M & T] and the borrower [Putnam] will not amend, modify, replace or extend the mortgage without the prior written consent of the landlord.

Paragraph 11 of the Financing Agreement provided that

Neither this document nor any provision hereof may be changed, waived, discharged or terminated, except by an instrument in writing signed by [M & T], the Landlord, and [Putnam].

The Financing Agreement also gave M & T the right to cure any default by Putnam under the ground lease. Although no written extension of the Mortgage was executed after its August 5, 1986 maturity date, M & T and Putnam continued to treat the Mortgage as though it had been extended.

In April 1990, Putnam failed to make its monthly installment payment to M & T. On June 18, M & T demanded payment in

full. On June 28, M & T notified Putnam's sublessees that all future rents were to be paid to M & T. On July 13, when Putnam was unable to make its rent payment to the Landlord, M & T cured the default by tendering payment to the Landlord. In accepting the payment, the Landlord stated by written correspondence dated July 16 to M & T that it was not waiving any of its rights against Putnam or M & T. *See Plaintiff's Exhibit* M. On August 9, 1990, Putnam filed a petition under chapter 11. During the period from June 28, 1990 until the commencement of the bankruptcy case, M & T collected all rents due under Putnam's subleases.

## II.

### AVOIDANCE OF MORTGAGE AND ASSIGNMENT OF LEASES AND RENTS

Putnam argues that it may avoid the Mortgage and Assignment of Leases under § 544(a) because the Assignment of Leases was never properly perfected.[1] Putnam also contends that those security interests are avoidable because they were extended without the Landlord's prior written consent in violation of the Financing Agreement, and therefore, it may avoid them under § 544(b). For the reasons that follow, I conclude that Putnam's arguments are unavailing.

Section 544 of the Bankruptcy Code provides

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

■ The thrust of § 544 is to avoid, for the benefit of the estate, interests of the debtor in property that were transferred to third parties when the transferred interests are either invalid or inferior to the rights of the debtor under nonbankruptcy law or the Bankruptcy Code.[2] It follows that when a third party has no interest in a debtor's property, § 544 is inapplicable.

■ In order for Putnam to obtain short term financing from M & T, it needed to mortgage its interest in the Ground Lease and assign the subleases. The Landlord agreed to permit the transfer of such interests for no more than one year with no extension beyond that period without his

---

1. In making this argument, Putnam apparently ignores the fact that although the subleases were assigned to M & T in the Mortgage as additional collateral, the Mortgage and Assignment of Leases were executed as separate security instruments. Any defect in the perfection of the Mortgage would not affect the perfection of the Assignment of Leases.

2. Section 1107(a) vests the debtor in possession with essentially the same rights and powers as a trustee.

prior written consent. To that effect, § 14(b) of the Ground Lease provides

> Without the prior written consent of landlord, neither tenant nor tenant's successors in interest, by operation of law or otherwise, shall *assign,* convey, *mortgage,* pledge, or in any manner encumber or transfer this *[ground] lease or any interest hereunder in whole or in part,* and any attempt to effect one or more of the foregoing activities, without such consent, shall be void and of no effect. A consent to any such activity shall not constitute consent to any such activity or activities in the future. (emphasis added)

It follows that the first question is whether that subsection of the Ground Lease is an improper restraint.

Connecticut courts have approved lease provisions which prohibit assignment without a landlord's prior consent, provided the landlord acts in good faith when exercising that right. *Warner v. Konover,* 210 Conn. 150, 154–155, 553 A.2d 1138 (1989). Lease provisions restricting assignment are conceptually analogous to prohibitions against encumbering without consent. The basis for allowing a landlord to require its consent to an assignment or encumbrance is so that the landlord can ensure the benefit of its bargain with its tenant. Retention of control over the status quo is at least as important in the context of encumbrances as it is with assignments. Just as a landlord might lose the ability to control its property rights if an objectionable tenant were allowed to assume a lease, its rights would be no less circumscribed by an encumbrance on its leasehold interest.

■ As noted, the Landlord conditionally consented in the Financing Agreement to the granting of the Mortgage which encumbered Putnam's interest under the Ground Lease and in the subleases. Paragraph 1 of the Financing Agreement provided in relevant part,

> Landlord does hereby (a) consent to the Mortgage to be given by [Putnam] to [M & T] of the leasehold interest of [Putnam] ... [M & T] and [Putnam] will not amend, modify, replace or extend the

Mortgage without the prior written consent of the Landlord.

Paragraph 16 of the Mortgage provided

> That [Putnam] hereby assigns to [M & T], subject to the terms of Section 14(c) of the Lease, as further security for the payment of the indebtedness secured hereby, the rents, issues and profits of the Premises and the Improvements, together with all subleases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said subleases ...

Putnam and M & T also executed a separate document known as the Assignment of Leases for the assignment of the subleases. All three documents were executed on the same day and, in essence, constituted a single transaction.

Since Putnam could not assign to M & T any more than what it was permitted to transfer under the Financing Agreement, the Assignment of Leases is no more than an additional instrument separately documenting the same security transfer and must be construed as the substantive equivalent of the assignment of subleases contained in the Mortgage. As such, the Assignment of Leases was subject to the same terms and conditions as the Mortgage, including its restriction on an extension beyond its August 5, 1986 maturity date. I therefore conclude that the Landlord's prior written consent was required for any extension of the Mortgage and Assignment of Leases.

■ Although the Landlord never gave his prior written consent to the extension of the Mortgage or Assignment of Leases, Putnam and M & T treated them as though they had been extended beyond the August 5, 1986 maturity date. M & T contends that the Landlord impliedly consented to the extension of the Mortgage and Assignment of Leases by his failure to object after August 5, 1986 and that it relied on his silence. I disagree as M & T's argument incorrectly assumes that the Landlord was required to take affirmative steps to enforce its rights.

When construing the terms of a contract, the intent of the parties, as determined from the language of the document, the surrounding circumstances, the motives of the parties, and the purposes sought to be achieved are to be given paramount effect. *Barnard v. Barnard,* 214 Conn. 99, 570 A.2d 690 (1990). It is clear from the quoted language of ¶ 1 of the Financing Agreement, as noted, *supra* at 478, that the parties imposed a condition subsequent on the continued viability of the Mortgage, and since the Assignment of Leases was linked to the Mortgage, to the latter security interest as well.

The nonoccurrence of the condition subsequent, as distinguished from a breach of a covenant,[3] does not result in a breach of the Financing Agreement but rather renders the security interests that were derived from it, *i.e.*, the Mortgage and Assignment of Leases, null and void after August 5, 1986. It follows that reliance on the Landlord's silence[4] could not be justified.

M & T's argument that the Landlord waived his right to object to the extension of the Mortgage and Assignment of Leases is also unavailing. As noted, *supra* at 3, ¶ 11 of the Financing Agreement states that any waiver of the agreement or any provision thereof must be in writing and signed by all three parties. No such writing was offered in evidence. Additionally, when the Landlord accepted the payment of rent on behalf of Putnam in July 1990, the Landlord clearly indicated that it was not waiving any of its rights against Putnam and M & T.

M & T's contention that the Landlord's objection would be barred by laches is misplaced. Its argument suggests that the Landlord was required to perform an affirmative act to enforce its rights. There was no such duty. The security interests lapsed by their own terms. I therefore conclude that the doctrine of laches is inapplicable. For the foregoing reasons, Putnam's efforts under § 544 to avoid the Mortgage and Assignment of Leases are unnecessary.

Putnam also argues that the assignment of rents[5] is avoidable under § 547 as a preference to the extent that M & T perfected its interest within the ninety days prior to the commencement of this case by the collection of rent from the sublessees. Section 547(a) provides for the avoidance of a preferential transfer of an interest of the debtor's property and is therefore inapplicable for the same reasons as stated under the analysis of Putnam's claims under § 544, since M & T did not have an enforceable security interest after August 5, 1986. It is noted that Putnam has not sought to avoid the transfer or the turnover of the rent money collected by M & T under §§ 547 or 542 respectively.

## CONCLUSION

Since I conclude that M & T has no security interests to avoid, it is ORDERED that judgment shall enter for the defen-

---

**3.** "A covenant is regarded as an assurance that something will be done in the future, while a condition is regarded as a fact or event that affects legal relations; it is a cause of some change of those legal relations." *Cramer v. Metropolitan Savings and Loan Association,* 401 Mich. 252, 258 N.W.2d 20, 23 (1977), quoting 3A Corbin, Contracts §§ 627, 633. "The remedy for breach of a covenant is damages or an injunction, whereas the remedy for default on a condition subsequent is termination of the contract." *Id.* (Citations omitted).

The case cited to by M & T for the proposition that the nonoccurrence of a condition subsequent only provides the right to terminate the obligations of the parties is inapposite. The issue in *D'Addario v. D'Addario,* No. 256879S,

1991 WL 84002 (Conn.Super. April 24, 1991) was whether under property law, an estate created by a fee simple subject to a condition subsequent continues after the occurrence of the terminating event until the power to terminate is exercised. The issue in this case turns on the effect of a condition subsequent under contract law.

**4.** Neither Putnam nor M & T claimed that the Landlord unreasonably withheld his consent. Indeed, there is no evidence that either party ever sought his consent after August 5, 1985.

**5.** As noted, both the Mortgage and the Assignment of Leases included an assignment of the rents from the subleases. *See supra* at 478 and 480.

dant, M & T and against the plaintiff, Putnam.